**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| NORMAN MICHAEL MILLER and | § | |
| SHERI PRATER MILLER, | § | |
|     Defendants/Appellants, | § | |
| | § | |
| v. | § | Case No. 4:07-cv-193 |
| | § | |
| NEIL LEWIS AND SHARON LEWIS | § | |
| d/b/a S.D.I.C., | § | |
|     Plaintiffs/Appellees | § | |

**MEMORANDUM OPINION AND ORDER AFFIRMING
THE BANKRUPTCY COURT'S FINDING OF NONDISCHARGEABILITY**

Before the court is the appeal of Norman Michael Miller and his wife, Sheri Prater Miller, of the decision of the United States Bankruptcy Court for the Eastern District of Texas determining a claim by Neil and Sharon Lewis to be nondischargeable under various subsections of 11 U.S.C. § 523. This court agrees with the decision of the bankruptcy court and therefore AFFIRMS the decision of that court.

**I. BACKGROUND**

This dispute is a product of fraudulent activities perpetrated by Norman Miller ("Miller") upon Neil Lewis ("Lewis") and other investors.[1] Unfortunately, this episode is merely a chapter in the prolific career of chicanery authored by Miller. Over the course of roughly fifteen months, Miller stole about $2,659,000 from an investment group headed by Neil Lewis. (Br. Appellees 9-11.) Miller and Lewis first met through a mutual business contact. (*Id*. at 8.) Miller solicited Lewis' interest in gathering money (that of both Lewis and his contacts) to be invested in high-reward

---

[1] The bankruptcy court's Findings of Fact and Conclusions of Law suggest that Sheri Miller may have also played a minor role in the rampant fraud. However, any role that she played is immaterial to this appeal.

investments that Miller billed as "contract trading programs" ("CTPs"). (*Id*.)

Over the course of the relationship, Miller, who held himself out as an investment professional, allowed Lewis to invest varying amounts in the programs with limits purportedly set by large banks such as J.P. Morgan. In order to place the investments, Lewis and others formed a partnership called the South Dakota Investment Club ("SDIC"). (*Id*. at 9.) Periodically, as SDIC was "approved" for increasing investment amounts, Lewis was so informed, and he solicited the money from other SDIC partners. (*Id*.) The money would then be wired to Miller's account, and he would supposedly invest the funds. In reality, no trading program ever existed. In fact, it is evident that Miller simply used the money as if it were his, either spending it freely or giving it to various of his relatives. (Finds. Fact and Concls. Law 10, ¶ 46.) At no point did Miller even entertain the idea of treating the funds as anything other than his personal petty cash.

Though Miller went to great lengths to protect his despicable scheme, including forging bank documents, the scheme unraveled, and the Lewises sued the Millers and others in an Arizona state court. The matter was removed to the United States District Court for the District of Arizona. (Br. Appellees 7.) After two years of litigation, the parties reached a settlement, and the court entered a stipulated judgment. That judgment, which is final under Rule 58, reads in relevant part

> NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the defendants are liable to plaintiffs for breach of contract, conversion, constructive trust, fraud and breach of fiduciary duty in the amount of $9,000,000.00. It is expressly ordered that the Millers defrauded Lewis and that this judgement [sic], in its entirety, is not dischargeable under any provision of the United States Bankruptcy Code.

(Finds. Fact and Concls. Law 12, ¶ 53.) The settlement agreement signed in connection with the judgment called for the Millers to pay $3,000,000 to the Lewises up front and to pay an additional

$1,500,000 in annual $250,000 installments. Only if the installments were not timely paid would the judgment ripen into the above-quoted $9,000,000 figure. (*Id*. at ¶¶ 55-56.) Critically, as is true here, the Arizona lawsuit was prosecuted by the Lewises as individuals, rather than on behalf of SDIC.

Miller has paid $3,000,000 of this judgment and nothing more. Consequently, the quarter-million dollar installment payments are in default, and the judgment is worth the full $9,000,000 in the hands of the Lewises. (Br. Appellees 13.) The source of the $3,000,000, however, comes from the proceeds of another pernicious scam cooked up by Miller in South Carolina. (*Id*.) Shortly before entry of the Arizona judgment, Miller had agreed to plea guilty to violation of 18 U.S.C. § 1343 and to pay $17,000,000 in restitution in connection with the South Carolina plot. (*Id*. at 7.) These facts were not disclosed to the Lewises until after Miller actually entered his guilty plea, long after the ink had dried on the Miller-Lewis settlement agreement. (*Id*.) When the settlement agreement was signed, the Millers knew that they would be unable to make the required payments lawfully. (*Id*. at 13.) It is evident from the circumstances that the Millers never intended to make any additional payments on the judgment, and the bankruptcy court so found. (Finds. Fact and Concls. Law 24, ¶ 30.)

The Millers subsequently filed for bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Texas. The Lewises submitted a claim against the Millers' estate for $7,572,279, the unpaid portion of the Arizona settlement plus accrued interest. (Finds. Fact and Concls. Law 18, ¶ 7.) The Lewises contended in the bankruptcy court that the debt is nondischargeable because it arose out of the fraud conducted by Miller. The Millers sought discharge of this and other debts under Chapter 7 of the Bankruptcy Code. A trial was had on the

merits, and the bankruptcy court determined that Sections 523(a)(2)(A), (a)(4), and (a)(6) render the judgment nondischargeable. The Millers appealed that judgment to this court.

## II. LEGAL STANDARD

This court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1) (2006). The court reviews legal conclusions of the bankruptcy court *de novo*. *United States Dep't. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003). The findings of fact made by the bankruptcy court will not be disturbed unless found by the district court to be clearly erroneous. *Id.*; FED. R. BANK. P. 8013.

## III. DISCUSSION AND ANALYSIS

*A. Real Party in Interest Under Rule 17(a)(1)*

The Millers' first contention is that the Lewises do not have standing to pursue this action. They reason that, because each of the wire transactions were between Norman Miller and SDIC, SDIC alone has standing to pursue this matter. Though, as noted above, the Arizona lawsuit was prosecuted at all times by the Lewises in their individual capacity, this issue was never brought up. Thus, that court's statement that "the defendants are liable to the plaintiffs" speaks of liability for the Millers to the Lewises, not to SDIC.

The bankruptcy court correctly viewed this argument not in terms of standing, but rather in terms of real party in interest under Rule 17. That rule provides that "[a]n action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (quoting *Farrell Constr. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir. 1990)).

The bankruptcy court concluded that the issue of real party in interest was never raised in the Arizona court, and because that issue could (and certainly should) have been raised there, the final judgment is immune from collateral attack under principles of preclusion. (Finds. Fact and Concls. Law 17, ¶ 4.) While that may very well be true, this court finds that the Millers waived this argument not only in the Arizona court, but, more importantly for these purposes, in the bankruptcy court as well. The Lewises initiated their adversary action in the bankruptcy court on March 22, 2005. The real party in interest issue, though erroneously argued by the Millers in terms of standing, was not urged by the Millers until October 23, 2006, the day before the trial was originally scheduled to take place, in their Trial Brief.

Because a defendant generally knows right away whether his adversary "owns the claim," Rule 17(a) disputes are generally resolved very easily in the rare event that they even arise. *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 483 (5th Cir. 2002) (internal quotation marks omitted). For these reasons, the defendant must timely raise a real party in interest objection, or such an objection is waived. *Id*. "The objection must be raised when joinder is practical and convenient." *Id*. at 484. The Millers waited over a year and a half to raise this simple objection on the eve of the trial after neglecting to raise it at all during the almost two year pendency of the Arizona litigation. The Millers waived the defense not only in Arizona, but independently in the bankruptcy court as well. The Lewises are therefore the proper litigants in this matter.

*B. Nondischargeability Under Section 523(a)(2)(A)*

Section 523(a) of the Bankruptcy Code excepts from discharge certain debts because Congress has determined that the public policy favoring their repayment overrides the policies favoring a fresh start for debtors. In particular, Section 523(a)(2)(A) provides that

> [a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt...for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by...false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...

11 U.S.C. § 523(a)(2)(A) (2006).  The bankruptcy court found the judgment held by the Lewises to represent money obtained by Miller through false pretenses, false representations and actual fraud.  (Finds. Fact and Concls. Law 24, ¶ 31.)  Thus, it determined the debt to be nondischargeable.

The Millers first argue that the bankruptcy court erred in finding justifiable reliance on the part of Lewis.  The Millers are precluded from attacking the merits of the Arizona judgment with respect to the fraud count.

The elements of fraud in the State of Arizona (the law providing the causes of action forming the basis of the Arizona judgment) are essentially the same as the elements of fraud under Section 523 of the Bankruptcy Code.  *Compare Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982) *with Recoveredge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).  Thus, inherent in the final judgment of the federal court in Arizona is an adjudication that Lewis justifiably relied upon the representations made by Miller.

Arizona law on issue preclusion governs this matter.  *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  In Arizona, a litigant is barred from litigating an issue if the issue has already been litigated provided that four conditions are present.  The fact or issue to be litigated must have been actually litigated.  The litigant must have had a full opportunity to litigate the fact or issue.  A final judgment must have been entered in the original proceeding.  The fact or issue must have been essential to the original judgment.  *Chaney Building Co. v. City of Tuscon*, 716 P.2d 28, 30 (Ariz. 1986).  Because Arizona law treats those issues necessary to a consent judgment as actually

litigated, *id*., all four of the issue preclusion factors are plainly satisfied. Collateral attack of the Arizona judgment on the issue of justifiable reliance is an avenue that is foreclosed as to the Millers.

The Millers also cite as error the bankruptcy court's conclusion as to the amount of the debt deemed to be nondischargeable. They argue that the nondischargeable debt should be limited to the amount of money actually stolen by Miller. The Millers, having returned all the money poached from the Lewises by virtue of the CTP ploy, albeit through funds obtained by further deception, thus argue under this principle that the Arizona judgment should be discharged in its entirety. However, it is well settled that Section 523(a)(2)(A) carries with it no such restitutionary ceiling. *Cohen v. De la Cruz*, 523 U.S. 213, 219 (1998). Based on both the plain language of the statute, *id*. at 218-19, and the longstanding policy of "affording relief only to an honest but unfortunate debtor," *id*. at 217, the Court determined that Section 523(a)(2)(A) excepts from discharge any debt arising from the debtor's fraud. *Cohen*, 523 U.S. at 218

Under the *Cohen* analysis, the entirety of the Arizona judgment is an obvious outgrowth of Miller's fraudulent scheme. This concept also defeats the Millers' argument that the Arizona federal court's failure to apportion damages among counts creating both nondischargeable debt (i.e., fraud) and dischargeable debt (e.g., breach of contract) prohibits the consideration of the entire judgment as nondischargeable. Alternatively, the court is in agreement with the bankruptcy court that, in reaching settlement of the Arizona litigation, the Millers obtained that debt through fraud. Under either mode of analysis, the entire debt embodied in the Arizona judgment falls squarely within the reach of Section 523(a)(2)(A) and is excepted from discharge. The court is further informed by the fact that Section 523(a)(2)(A) is "designed to protect the victims of fraud," rather than its perpetrators. *Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 319 (5th Cir. 2005).

These grounds for affirming the bankruptcy court being sufficient, the court need not entertain the parties' alternative arguments.

## IV.  CONCLUSION

The Millers' attempted manipulation of the Bankruptcy Code falls short of its intended mark, and this court is in agreement with the bankruptcy court's conclusion that the Bankruptcy Code prevents the discharge of the debt owed by the Millers to the Lewises.  As such, that court's decision is hereby AFFIRMED in all respects germane to the above discussion.  This matter is REMANDED to the United States Bankruptcy Court for the Eastern District of Texas for proceedings not inconsistent with this order.

IT IS SO ORDERED.

**SIGNED this the 21st day of March, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE